UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

————————————

RAY F. CLANTON

        Plaintiff,                                   Case No.  1:14-CV-1039

v.

                                           HON. ROBERT HOLMES BELL

COMMISSIONER OF SOCIAL
SECURITY


        Defendant,
————————————————————/

## OPINION

      This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).   Plaintiff Ray Clanton seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act.

## STANDARD OF REVIEW

      The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence

supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

# PROCEDURAL POSTURE

Plaintiff is 51 years old. (Tr. 118.) He graduated high school and was previously employed as a furniture upholsterer and a hi-lo operator. (Tr. 32, 60.) Plaintiff applied for benefits on July 19, 2011, alleging that he had been disabled since February 24, 2011, due to depression, anxiety, high blood pressure, arthritis, back pain, and shoulder problems. (Tr. 73, 118–19.) Plaintiff's application was denied on September 2, 2011, after which time he requested a hearing before an ALJ. (Tr. 73–77, 81.) On January 25, 2013, Plaintiff appeared with his counsel before ALJ Michael Condon with testimony being offered by Plaintiff and a vocational expert (VE). (Tr. 27–70.) In a written decision dated April 5, 2013, the ALJ determined that Plaintiff was not disabled. (Tr. 8–20.) The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1–4.) Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

# ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 415.920(a-f).[1] If the Commissioner can make a

---

[1] 1.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2.   An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3.   If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

The ALJ determined Plaintiff met his burden at steps one through four. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 13.) At the second step in the sequential evaluation, the ALJ determined Plaintiff had the following severe impairments: (1) degenerative disc disease of the cervical and lumbar spine with disc herniation at C5-6 and L4-5; (2) cervical radiculopathy; (3) left shoulder impingement syndrome with chronic shoulder pain; and (4) depressive disorder. (Tr. 13.) At the third step, the ALJ found that Plaintiff did not have an impairment or

---

4.   If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5.   If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

combination of impairments that met or equaled the requirements of the Listing of Impairments. (Tr. 14–15.) At the fourth step, the ALJ found that Plaintiff retained the residual functional capacity (RFC) based on all of the impairments:

> to perform light work as defined in 20 CFR 416.967(b) with the following limitations. The claimant can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. He can frequently balance, occasionally stoop and crouch, but can never kneel or crawl. He cannot perform any overhead reaching or lifting with his left upper extremity. The claimant cannot perform any ambulation over uneven terrain. The claimant is limited to simple, unskilled work.

(Tr. 16.) The ALJ next determined that Plaintiff was not able to perform any of his past relevant work. (Tr. 19.)

Plaintiff's claim, however, failed at the fifth step. At this point, the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health & Human Servs.,* 587 F.2d 321, 323 (6th Cir. 1978). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his

limitations notwithstanding. Such was the case here. The vocational expert testified that there existed approximately 33,700 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 59–61.) This represents a significant number of jobs. *See Born v. Sec'y of Health & Human Servs.*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006).

Accordingly, the ALJ concluded that Plaintiff was not disabled from February 24, 2011, (the alleged onset date) through April 5, 2013, (the date of the decision).

## DISCUSSION

Plaintiff claims the ALJ erred in several respects. Specifically, Plaintiff claims the ALJ erred in considering whether Plaintiff met the requirements of Listing 1.04A in the Listing of Impairments, erred by failing to consult a medical opinion regarding whether he equaled a listing, improperly relied on the state agency decision maker's opinion in determining Plaintiff's RFC, failed to properly consider Plaintiff's obesity, improperly discounted his credibility and, finally, failed to assign proper weight to the opinion of his treating physicians. (ECF No. 11, PageID.958.) The Court will address the issues below.

### 1. Substantial Evidence Supports the ALJ's Conclusion that Plaintiff Did Not Meet the Requirements of Listing 1.04A.

Plaintiff first argues that he meets the requirements of Listing 1.04A and that the ALJ

erred by failing to adequately discuss whether Plaintiff met the requirements of the Listing.[2] (ECF No. 11, PageID.959–61; ECF No. 17, PageID.1004–06.) Step three of the sequential analysis regulates a "narrow category of adjudicatory conduct." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 649 (6th Cir. 2006) (en banc). It "governs the organization and evaluation of proof of listed impairments that, if supported, renders entitlement to benefits a foregone conclusion." *Id.* "Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the [Social Security Administration's] SSA's special list of impairments, or that is at least equal in severity to those listed. The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. A person with such an impairment or an equivalent, consequently, necessarily satisfies that statutory definition of disability." *Id.* at 643 (internal citations omitted).

A claimant has the burden of demonstrating that he satisfies all the individual requirements of a listing. *See Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003); *see also Perschka v. Comm'r of Soc. Sec.*, 411 F. App'x 781, 786–87 (6th Cir. 2010). "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Comm'r of Soc. Sec.*, 34 F. App'x 202, 203 (6th Cir. 2002). An impairment satisfies a listing only when it manifests the specific findings described in the

---

[2] Plaintiff later makes a one sentence argument that the ALJ also should have considered whether Plaintiff met Listing 12.07, the listing for Somatoform Disorders. (ECF No. 11, PageID.967.) Because Plaintiff has failed to fully develop this argument, however, the Court finds that Plaintiff has waived this claim. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones").

medical criteria for that particular impairment. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); 20 C.F.R. §§ 404.1525(c), 416.925(c); *see also Lusk v. Comm'r of Soc. Sec.*, 106 F. App'x 405, 411 (6th Cir. 2004) ("Substantial evidence exists to support a finding that the claimant does *not* meet the listing if there is a lack of evidence indicating the existence of all of the requirements of a listed impairment."). "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam*, 348 F.3d at 125.

Listing 1.04A for disorders of the spine contains the following requirements:

1.04. Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

At the administrative hearing, Plaintiff's counsel argued that Plaintiff met the requirements of Listing 1.04. (Tr. 66–69.) The ALJ, however, found that Plaintiff did not meet or equal the requirements of any listed impairment, including Listing 1.04A:

> The claimant does not have an impairment or combination of impairments that meet or medically equal a listed impairment. No treating or examining physician has indicated findings that would satisfy the severity requirements of any listed impairment. The undersigned also considered the opinion of the State Agency medical consultants who evaluated this issue at the initial and reconsideration

> levels of the administrative review process and reached the same
> conclusion (20 CFR 404.1527(f) and Social Security Ruling 96-6p).
> Furthermore, the undersigned considered all the listings in reaching this
> finding, with specific emphasis on 1.02, 1.04, and 12.04.

(Tr. 14.) Elsewhere in the decision, the ALJ noted Plaintiff experienced some degenerative changes, but concluded "the generally mild nature of the documented pathology does not support the claimant's allegations of marked pain." (Tr. 17.) The ALJ further pointed to "multiple negative straight leg raise tests in the record, and the signs of full muscle strength in the lower extremities. (Tr. 17.) Plaintiff argues that the ALJ's analysis regarding his physical impairment was insufficient due to being little more than a "perfunctory analysis." (ECF. No.11, PageID.960.)

Recent Sixth Circuit opinions have "declined to require remand whenever an ALJ provides minimal reasoning at step three of the five-step inquiry." *See Wilson v. Colvin*, No. 3:13-cv-710, 2015 WL 1396736, at * 3 (E.D. Tenn. Mar. 26, 2015) (citing *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 364–66 (6th Cir. 2014); *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012)).

In *Forrest*, for example, the Sixth Circuit rejected the plaintiff's arguments that a "sparse step-three analysis" required remand either because it failed to follow agency regulations and denied Forrest an important procedural right or because the ALJ's failure to explain his findings precluded substantial evidence review. 591 F. App'x at 364. The Sixth Circuit:

> [D]ecline[d] Forrest's invitation to extend *Wilson* [*v. Comm'r of Soc. Sec.*, 378

> F.3d 541 (6th Cir. 2004)] to require remand when the ALJ provides minimal reasoning at step three of the five-step inquiry . . . . Importantly, the regulations governing the five-step inquiry require only that the ALJ "consider all evidence in [the claimant's] case record," 20 C.F.R. § 404.1520(a)(3), and, at step three, "consider the medical severity of [the claimant's] impairment(s)," *id.* § 404.1520(a)(4)(iii). *See Bowie* [*v. Comm'r of Soc. Sec.*], 539 F.3d [395,] 400 [6th Cir. 2008)] (distinguishing requirement that ALJ "consider" from requirement that he give "good reasons").

*Forrest*, 591 F. App'x at 365. Moreover, an ALJ's failure to provide a detailed analysis at step three is not a basis for relief if the ALJ "made sufficient factual findings elsewhere in his decision to support his conclusion at step three." *Id.* at 366. There is "no need to require the ALJ to spell out every fact a second time." *Id.* Here, the ALJ discussed the medical record in detail and articulated ample support for his determination that Plaintiff did not satisfy Listing 1.04A. (Tr. 14–17.)

In addition, the Sixth Circuit recognizes that any error with respect to the ALJ's step three analysis is harmless unless the claimant can establish that he satisfied the listing in question. *Forrest*, 591 F. App'x at 366; *see also Chappell v. Comm'r of Soc. Sec.*, No. 1:14-cv-1005, 2015 WL 4065261, at *4 (W.D. Mich. July 2, 2015). No treating or examining physician has offered an opinion that Plaintiff's back impairment meets or equals the requirements of Listing 1.04A, and Plaintiff's argument that he met the requirements of Listing 1.04A is not persuasive.

As noted above, Listing 1.04A requires, among other things, "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness)

accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A. On numerous occasions, however, Plaintiff demonstrated full strength in his lower extremities and had negative straight leg raise tests. (Tr. 155, 157, 234, 236, 328, 737–38, 741.) Plaintiff was also described as having normal sensation. (Tr. 737–38, 741.) A June 28, 2011 review of an MRI revealed only "mild spinal stenosis at C4-5 and C5-6 but there is no convincing compression of the cord. This study is otherwise negative." (Tr. 676–77.) In sum, substantial evidence supports the ALJ's conclusion that Plaintiff did not met the requirements of Listing 1.04A and Plaintiff has not demonstrated otherwise.

      **2.**      **The ALJ Did Not Err in Failing to Consult a Medical Opinion on Whether Plaintiff Equaled a Listing at Step Three.**

Plaintiff next argues that the record is devoid of a medical expert opinion on the issue of equivalence, and that under SSR 96-6p, this requires reversal of the Commissioner's decision because the ALJ failed to properly evaluate whether Plaintiff equaled Listing 1.04A. Upon review, the Court finds no basis for disturbing the Commissioner's decision.

It is possible for a claimant to provide evidence of a medical equivalent to a listing. 20 C.F.R. §§ 404.1526, 416.926. "To demonstrate such a medical equivalent, the claimant must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 854 (6th Cir. 2011) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)) (emphasis in original); *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) ("When a claimant alleges that he meets

or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency.") (citing *Evans v. Sec'y of Health & Human Servs.*, 835 F.2d 161, 164 (6th Cir. 1987)).

Plaintiff's argument that remand is required is based on SSR 96-6p, a social security ruling which the Social Security Administration adopted on July 2, 1996. *See Policy Interpretation Ruling for Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence* (SSA July 2, 1996) (reprinted at 1996 WL 374180). The Administration defined the purpose of this ruling as follows: "To clarify Social Security Administration policy regarding the consideration of findings of fact by State agency medical and psychological consultants and other program physicians and psychologists by adjudicators at the administrative law judge and Appeals Council levels." 1996 WL 374180, at * 1.

The single decision maker (SDM) model was designed to streamline administrative review of disability claims. Under this model, the SDM assumes primary responsibility for processing the claimant's application for disability, including making the initial disability determination. The process is further streamlined in that a claimant who disagrees with the initial determination is permitted to skip the reconsideration level of the administrative

review process and immediately request a hearing before an ALJ. 20 C.F.R. §§ 404.906, 416.1406; *see White v. Comm'r of Soc. Sec.*, No. 12-cv-12833, 2013 WL 4414727, at *8 (E.D. Mich. Aug. 14, 2013).

The regulations authorizing the SDM model did not appear in the Code of Federal Regulations until 1997, a year after SSR 96-6p had been adopted. Nevertheless, the final rules authorizing the SDM model were published in the Federal Register on April 24, 1995, and they went into effect on that date–more than a year before SSR 96-6p was adopted. *See* Testing Modifications to the Disability Determination Procedures, 60 Fed. Reg. 20023-01 (April 24, 1995). It is logical to assume that the Social Security Administration was aware of its then-new regulations authorizing the SDM model when it adopted SSR 96-6p. To the extent that any provision of SSR 96-6p conflicts with applicable regulations, however, the regulations must control.[3] *See Paxton v. Sec'y of Health & Human Servs.*, 856 F.2d 1352, 1356 (9th Cir. 1988).

The "public comments" section of the SDM announcement in the Federal Register addressed the concerns of some commentators "regarding the apparent lack of involvement of the medical consultant in making disability determinations because the medical consultant would not be required to sign the disability determination forms used to certify the

---

[3] Social security rulings purport to interpret applicable regulations. *See Ferguson v. Commissioner*, 628 F.3d 269, 272 (6th Cir. 2010). "Social Security Rulings do not have the force and effect of law, but are binding on all components of the Social Security Administration" and represent "precedent final opinions and orders and statements of policy and interpretations" adopted by the Commissioner. 20 C.F.R. § 402.35(b)(1). In *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004), the court refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same way as Social Security Regulations, but *assumed* that they are." 628 F.3d at 272 n.1.

determination of disability to us." 60 Fed. Reg. at 20025. The Administration's response acknowledged that there would be cases without a medical consultant opinion. The decision maker would consult with a medical consultant when the decision maker determined that a consultation was appropriate. *See* 60 Fed. Reg. at 20025.

SSR 96-6p acknowledges that the issue of equivalence is an administrative issue that is "reserved to the Commissioner[.]"[4] 1996 WL 374180, at *3 (citing 20 CFR §§ 404.1527(e) and 416.927(e)[5] and SSR 96-5p). "The administrative law judge or Appeals Council is responsible for deciding the ultimate legal question whether a listing is met or equaled." *Id.* As the trier of fact, "an administrative law judge or the Appeals Council is not bound by a finding by a State agency medical or psychological consultant or other program physician or psychologist as to whether an individual's impairment(s) is equivalent in severity to any impairment in the Listing of Impairments." *Id.*

The issue before the Court is what to make of the sentence in SSR 96-6p which states that a "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert

---

[4] "For cases at the administrative law judge or Appeals Council level, the responsibility for deciding medical equivalence rests with the administrative law judge or the Appeals Council." 20 C.F.R. §§ 404.1526(e), 416.926(e).

[5] Regulations reserving equivalence and other issues to the Commissioner now appear at 20 C.F.R. §§ 404.1527(d) and 416.927(d). SSR 96-5p further underscores that the issue of equivalence is reserved to the Commissioner. *See Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner*, 96-5p (SSA July 2, 1996) (reprinted at 1996 WL 374189).

opinion evidence and given appropriate weight." 1996 WL 374180, at *3. This statement is immediately followed by a sentence emphasizing that the "signature of a State agency medical or psychological consultant on a SSA-831-U5 (Disability Determination Transmittal Form) . . . ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given the question of medical equivalence and at the initial and reconsideration levels of administrative review." 1996 WL 374180, at *3.[6]

Suffice it to say that this aspect of SSR 96-6p is difficult to reconcile with SDM regulations that eliminated the requirement for obtaining such signed written statements and eliminated the reconsideration level of administrative review. 20 C.F.R. §§ 404.906(b)(2),(4), 416.1406(b)(2),(4). SSR 96-6p becomes even more muddled in the SDM context when it lists circumstances under which an ALJ must obtain an updated opinion from a medical expert. 1996 WL 374180, at *3 n.2 (citing 20 CFR §§ 404.1512(b)(6), 404.1527(f), 416.927(b)(6), 416.927(f)). Sections 404.1512(b)(6) and 416.927(b)(6) (now found at sections 404.1512(b)(vi) and 416.927(b)(vi)) simply include opinions of State agency physicians and psychologists within the definition of evidence. The regulations that had been found at 20 C.F.R. §§ 404.1527(f) and 416.927(f) are now found in subsection (e), and they plainly *do not require* that an ALJ consult with a medical expert before making his finding that a plaintiff did not meet or equal the requirements of a listed impairment. *See Stevens v.*

---

[6]Defendant argues that because Psychologist Elissa Lewis signed such a form, Plaintiff cannot succeed on this claim of error. (ECF No. 15, PageID.980–81 (citing Tr. 72.)) As explained below, however, it is unclear how, as a Psychologist, Dr. Lewis was qualified to opine on whether Plaintiff met a listing for a physical impairment.

*Comm'r of Soc. Sec.*, No. 1:12-cv-977, 2014 WL 357307, at *5–6 (W.D. Mich. Jan. 31, 2014); *see also Felt v. Comm'r of Soc. Sec.*, No. 1:13-cv-1023, 2015 WL 5432639, at *2–3 (W.D. Mich. Sept. 15, 2015); *O'Neill v. Colvin*, No. 1:13-cv-867, 2014 WL 3510982, at *17–18 (N.D. Ohio July 9, 2014); *Wredt ex rel. E. E. v. Colvin*, No. 4:12-cv-77, 2014 WL 281307, at *7 (E.D. Tenn. Jan. 23, 2014). The regulations allow an ALJ to call a medical expert to explain medical records but do not require him to do so. "Administrative law judges may [] ask for and consider opinions from medical experts on the nature and severity of your impairment(s) and on whether your impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart." 20 C.F.R. §§ 404.1527(e)(2)(iii), 416.927(e)(2)(iii).

On August 30, 1999, the Social Security Administration published a notice that the SDM model would go into effect in Michigan on or about October 1, 1999. *See* Modifications to the Disability Determination Procedures; Disability Claims Process Redesign Prototype, 64 Fed. Reg. 47218-01 (Aug. 30, 1999). The SDM program was extended in 2002, 2003, 2006, 2009, 2012, 2013, 2014, and 2015. It will continue through at least September 23, 2016. *See* Modifications to the Disability Determination Procedures; Extension of Testing of Some Disability Redesign Features, 67 Fed. Reg. 75895-01 (Dec. 10, 2002); 68 Fed. Reg. 38737-03 (June 30, 2003); 71 Fed. Reg. 45890-01 (Aug 10, 2006); 74 Fed. Reg. 48797-01 (Sept. 24, 2009); 77 Fed. Reg. 35464-01 (June 13, 2012); 78 Fed. Reg. 45010-03 (July 25, 2013); 79 Fed. Reg. 39453-01 (July 10, 2014); 80 Fed. Reg. 47553-03 (Aug. 7, 2015). Although Michigan has operated under the SDM model for 16 years, the

argument that SSR 96-6p requires a medical opinion on the issue of equivalence at step three in SDM cases is a relatively recent development, particularly here in the Western District of Michigan.

Decisions from the Eastern District reflect disagreement concerning SSR 96-6p's statement regarding the need for a medical opinion on equivalence. Cases such as *Gallagher v. Comm'r of Soc. Sec.*, No. 10-cv-12498, 2011 WL 3841632, at *8–9 (E.D. Mich. Mar. 29, 2011) and *Timm v. Comm'r of Soc. Sec.*, No. 10-cv-10594, 2011 WL 846059, at *4 (E.D. Mich. Feb. 14, 2011) find no error because under the regulations, the ALJ is authorized to make a disability determination without a medical consultant opinion. *See also Oakes v. Barnhart*, 400 F. Supp. 2d 766, 774–78 (E.D. Pa. 2005). Other cases such as *Fensterer v. Comm'r of Soc. Sec.*, No. 12-13166, 2013 WL 4029049, at *8–9 (E.D. Mich. Aug. 7, 2013) and *McPhee v. Comm'r of Soc. Sec.*, No. 12-cv-13931, 2013 WL 3224420, at *15-16 (E.D. Mich. June 25, 2013), hold that it is an error requiring remand as a matter of course.

The latter cases are not persuasive because they fail to give adequate consideration to the structure of the sequential analysis under the social security regulations which firmly place the burden at step three on the plaintiff. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d at 474; *Walters v. Comm'r of Soc. Sec.*, 127 F.3d at 529; *Lusk v. Comm'r of Soc. Sec.*, 106 F. App'x at 411; *see also Forrest,* 591 F. App'x at 366.  Moreover, a harmless error standard

applies here.[7] *See id.*; *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[C]ourts are not required to convert judicial review of agency action into a ping-pong game where remand would be an idle and useless formality.") (citations and quotations omitted); *accord Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). "If an agency has failed to adhere to its own procedures, [the Court] will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Rabbers*, 582 F.3d at 654. Where, as here, the plaintiff was represented at the administrative hearing by an attorney and the plaintiff made no attempt to satisfy his burden at step three by presenting both argument and evidence on the issue of equivalence, any error the ALJ may have committed by not obtaining an opinion on the equivalence issue was harmless. Accordingly, Plaintiff's claim of error regarding the SDM at step three is denied.

### 3.     The ALJ Erred, at Step Four, in Considering the SDM's Opinion.

While Plaintiff frames his discussion regarding the SDM as an alleged error at step three regarding equivalency, Plaintiff also presents a related argument that the SDM erred at step four in relying on the SDM's opinion regarding his RFC. (ECF No. 11, PageID.959.) After review, the Court agrees with Plaintiff that the ALJ improperly considered that SDM's opinion at step four.

---

[7] In *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009), the Supreme Court observed that the harmless error standard is intended to "prevent appellate courts from becoming impregnable citadels of technicality."

As noted above, the SDM model "provides streamlined procedures as an experiment, in which State Agency disability examiners may decide cases without documenting medical opinions from State Agency medical consultants." *Guyaux v. Comm'r of Soc. Sec.*, No. 13–12076, 2014 WL 4197353 at *17 (E.D. Mich. Aug. 22, 2014). "Once the claimant's application reaches the ALJ, however, the SDM's assessment is no longer relevant to the determination of disability." *White v. Comm'r of Soc. Sec.*, No. 12–cv–12833, 2013 WL 4414727 at *8 (E.D. Mich. Aug.14, 2013). "As the SDM is not a medical professional, *his or her opinion is entitled to no weight.*" *Lopez v. Astrue*, 805 F. Supp. 2d 1081, 1092 (D. Colo. 2011) (emphasis added).

Here, the ALJ addressed the SDM's opinion, specifically a RFC assessment, as follows:

> [T]he undersigned *gives some weight* to the opinion of state agency determination official Bernadetta Shively who stated that the claimant could perform light work, with no overhead reaching with the left arm, and the need to avoid concentrated exposure to workplace hazards (13F). The undersigned *gives significant weight* to this opinion because it is consistent with the MRI findings of only mild to moderate pathology in the claimant's cervical and lumbar spines, and in the . . . left shoulder (9F1, 8F4). It also is consistent with the fact that the claimant has full use of his right arm, and appears to have little deficits in his ability to stand and or walk for prolonged periods (18F1, 3F21, 18F2). I do *give only some weight* to this opinion because Ms. Shively is not a certified medical source. That said, her limitations are reasonably in line with what the record suggests.

(Tr. 18) (emphasis added). In addition, the ALJ seems to have mistakenly identified Ms. Shively as a medical consultant. (Tr. 14.) The ALJ thus erred when he gave weight to Ms.

Shively's RFC assessment. Such a holding is consistent with numerous other courts who have considered the issue. *See Siverio v. Comm'r of Soc. Sec.*, 461 F. App'x 869, 871–72 (11th Cir. 2012) (it is not harmless error when an ALJ gives significant weight to the opinion of an SDM with no apparent medical credentials); *Hensley v. Comm'r of Soc. Sec.*, No. 10–11960, 2011 WL 4407458 at *8–9 (E.D. Mich. Aug. 23, 2011) (where an ALJ believed that an SDM was actually a physician and relied heavily on that opinion to establish the claimant's RFC, the ALJ's error required a remand for redetermination of the claimant's functional capacity). *See also Fowler v. Comm'r of Soc. Sec.*, No. 12–12637, 2013 WL 5372883 at *4 (E.D. Mich. Sept. 25, 2013) ("[t]he Commissioner's attempt to expand the application of the SDM model beyond the initial determination of disability and through proceedings before the ALJ is unpersuasive"); *Maynard v. Astrue*, No. 11–12221, 2012 WL 5471150 at *6–7 (E.D. Mich. Nov. 9, 2012) (where an ALJ erroneously relied on an SDM's opinion as state agency medical opinion, the error required a remand for further proceedings).

Defendant argues that Plaintiff misstates the facts, because Dr. Elissa Lewis, PhD, reviewed the record and signed off on the SDM's conclusions. (ECF No. 15, PageID.980–81) (citing Tr. 72.) As a psychologist, however, Dr. Lewis was not qualified to render an opinion regarding Plaintiff's physical RFC. *Charlton v. Comm'r of Soc. Sec*., No. 1:11-CV-992, 2013 WL 5806169, at *14 (W.D. Mich. Oct. 29, 2013). Accordingly, the ALJ erred in giving significant weight to the opinion of Ms. Shively. *See Lopez*, 805 F. Supp. 2d at 1092. This matter will therefore be remanded pursuant to sentence four of 42 U.S.C.

§ 405(g). On remand, the Commissioner should re-evaluate Plaintiff's RFC without reference to Ms. Shively's assessment.

### 4.    The ALJ Properly Evaluated Plaintiff's Obesity.

Plaintiff next asserts that the ALJ failed to take into consideration that he is obese and failed to consider the impact of his obesity on his ability to work pursuant to the procedure articulated in Social Security Ruling 02–01p.

The ALJ's opinion contains a thorough discussion of Plaintiff's medical background and treatment history. While Plaintiff's care providers recognized that Plaintiff was overweight, Plaintiff has failed to identify any evidence or opinion that his care providers considered that his obesity impaired him to an extent beyond that recognized by the ALJ. As for whether the ALJ complied with Social Security Ruling 02–01p, as the Sixth Circuit has observed:

> Social Security Ruling 02–01p does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments, "may" increase the severity of the other limitations. It is a mischaracterization to suggest that Social Security Ruling 02–01p offers any particular procedural mode of analysis for obese disability claimants.

*Bledsoe v. Barnhart*, 165 F. App'x 408, 411–12 (6th Cir. 2006).

The ALJ considered all of Plaintiff's conditions and impairments when assessing Plaintiff's residual functional capacity. None of Plaintiff's care providers expressed the opinion that Plaintiff's obesity impaired or limited Plaintiff to an extent beyond that recognized by the ALJ. As the ALJ's RFC determination is supported by substantial

evidence, the Court discerns no error.

### 5.    The ALJ Did Not Error In Discounting Plaintiff's Credibility.

At the administrative hearing, Plaintiff testified that he was impaired to a far greater extent than that recognized by the ALJ. Plaintiff testified he lies down most of the day due to pain, that the pain prevents him from lifting anything, and that he requires the use of a cane to walk. (Tr. 37–38, 47.) Plaintiff argues that he is entitled to relief because the ALJ's rationale for discounting his testimony is not supported by substantial evidence.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also Grecol v. Halter*, 46 F. App'x. 773, 775 (6th Cir. 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan*

standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 F. App'x at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 F. App'x at 801 (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

In support of his decision to discount Plaintiff's credibility, the ALJ noted that the medical record did not support Plaintiff's allegations. (Tr. 17.) For example, the ALJ observed that Plaintiff generally had a normal gait. (Tr. 17.) This determination is supported by substantial evidence. (Tr. 571, 574, 576, 580, 668.) While Plaintiff condition may have subsequently deteriorated, in September 2011, he was still able to walk on his toes and heels. (Tr. 737.) Plaintiff testified at the hearing that he began using a cane in the summer of 2012 (Tr. 37–38), however the record does not show that he was ever prescribed a cane. Moreover, the only mention of Plaintiff's use of a cane appears in treatment notes from Plaintiff's mental health providers (Tr. 784, 818), and Plaintiff made no mention of using a cane in his function report. (Tr. 463.) The ALJ's credibility determination regarding Plaintiff's inability to lift weights is also supported by substantial evidence. Treatment notes show that Plaintiff had a full range of use with his right shoulder that was pain free. (Tr. 735.) The fact that one arm may be further impaired does not preclude the ability to perform light work. *See Brammer v. Astrue*, No. CIV.A. 11-404-DL, 2013 WL 85065, at *6 (E.D. Ky. Jan. 7, 2013). Therefore, substantial evidence supports the ALJ's credibility determination.

Plaintiff further argues, however, that the ALJ's analysis was faulty because the ALJ failed to analyze the required factors under 20 C.F.R. § 404.1529(c)(1). (ECF No. 11, PageID.966.) The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable." *Rogers v. Comm'r*

*of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007). The *Rogers* court observed that Social Security Ruling 96–7p requires that the ALJ explain his credibility determination and that the explanation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248.

The ALJ gave an adequate explanation why he found that Plaintiff's testimony claiming a greater level of functional restriction was not credible. It is well established that the ALJ is not required to discuss every factor or conduct a factor-by-factor analysis. *See Storey v. Comm'r of Soc. Sec.*, No. 98–1628, 1999 WL 282700, at *3 (6th Cir. Apr. 27, 1999); *Bowman v. Chater*, No. 96–3990, 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997) ("While this court applied each of these factors in *Felisky* [*v. Bowen*, 35 F.3d 1027 (6th Cir.1994)], we did not mandate that the ALJ undergo such an extensive analysis in every decision."); *Hysell v. Comm'r of Soc. Sec.*, No. 2:14–cv–587, 2015 WL 4068722, at *7 (S.D. Ohio Mar. 12, 2014); *Simmons v. Comm'r of Soc. Sec.*, No. 1:13–cv–203, 2014 WL 587172, at *9 (N.D. Ohio Feb. 14, 2014); *Ausbrooks v. Comm'r of Soc. Sec.*, No. 12–12144, 2013 WL 3367438, at *19 (E.D. Mich. July 5, 2013); *Myland v. Astrue*, No. 1:08–cv–632, 2009 WL 5216067, at *14 (W.D. Mich. Dec. 29, 2009). The ALJ began his discussion regarding Plaintiff's RFC by noting he had considered the evidence under the requirements of, among other things, SSR 96-7p, indicating that he understood his responsibility to consider the requisite factors. (Tr. 16.) The ALJ also noted Plaintiff's activities of daily living by noting

Plaintiff's ability to dress himself. (Tr. 17). The Court concludes that the ALJ's discussion was sufficiently specific to make clear his reasons for discounting Plaintiff's credibility. Accordingly, Plaintiff's claim of error is denied.

### 6. The ALJ Properly Considered the Medical Opinions in the Record.

Plaintiff's final claim is that the ALJ erred in his treatment of several opinions from Plaintiff's physicians. (ECF No. 11, PageID.968–70.) After review, the Court finds no error.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979, at *2

(citing *Shavers*, 839 F.2d at 235 n.1; *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994)).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

Finally, should an ALJ give less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his

assessment. *See, e.g., Oldham*, 509 F.3d at 1258; *Undheim*, 214 F. App'x at 450.

### A.    Dr. Michael Septer

On April 9, 2012, Dr. Septer signed a one-page note stating that Plaintiff was on permanent disability and further stated that "there are no work accommodations that will allow Plaintiff to return to gainful employment." (Tr. 742.)  On June 14, 2012, Dr. Septer further opined on Plaintiff's physical capabilities, finding that Plaintiff was impaired to a far greater extent than that recognized by the ALJ.  (Tr. 743).  Among other things, Dr. Septer opined that Plaintiff could lift ten pounds only sometimes, and would never be able to bend or stoop. (Tr. 743).  The ALJ gave "little weight" to Dr. Septer's opinions. (Tr. 18.)  The ALJ noted that it was inconsistent with the signs that Plaintiff had a normal gait and full muscle strength in his lower extremities. (Tr. 18.)  It was also inconsistent with the fact that Plaintiff had full use of his right arm.  (Tr. 18).  As noted above, these reasons are supported by substantial evidence.  Accordingly, the ALJ provided good reasons for discounting Dr. Septer's opinion.

### B.    Dr. Lennox Forrest

On October 18, 2011, Dr. Forrest filled out a two page Mental Residual Functional Capacity Assessment. (Tr. 779–80.)  Dr. Forrest found that Plaintiff was impaired to a far greater extent than that recognized by the ALJ.  Among other things, Dr. Forrest found that Plaintiff could not understand, remember, or carry out detailed instructions. (Tr. 779.)  Plaintiff was also impaired in his ability to sustain a routine without supervision, get along

with co-workers, and maintain socially appropriate behavior. (Tr. 780.)  The ALJ gave the opinion "little weight" noting that the doctor did not cite any evidence to support the conclusions, and his opinion appeared to be based off Plaintiff's subjective allegations, which he had found not to be fully credible. (Tr. 18.)  The restrictions Psychologist Forrest[8] suggested were not supported by objective evidence and were inconsistent with the record as a whole.  Treatment notes, ostensibly from Dr. Forrest, appear to merely recite the Plaintiff's subjective complaints. (Tr. 777–78.) The ALJ thus gave good reasons, supported by substantial evidence, to discount the opinion.

### C.    Other Medical Opinions

Plaintiff claims the ALJ failed to consider several other opinions that stated Plaintiff was unable to work.  On May 2, 2011, Dr. Kim Eastman took Plaintiff off work for four to six weeks. (Tr. 686.)  On July 7, 2011, Dr. Mark Joseph stated that Plaintiff was off work until August 26, 2011. (Tr. 773.) On October 26, 2011, Dr. Benjamin Bruinsma stated that he did not believe Plaintiff could return to work. (Tr. 736.)  Plaintiff argues that these opinions were entitled to controlling weight.

The flaw in Plaintiff's argument is that even assuming the above physicians qualified as treating physicians, they did not offer an opinion upon which the ALJ was required to give controlling weight.  A medical opinion is defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and

---

[8]The ALJ appears to have incorrectly considered Dr. Forrest's credentials.  The ALJ stated that Dr. Forrest was a M.D., however it appears from the record that Dr. Forrest has a PhD and is a psychologist. (Tr. 18, 702.)

severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2). While medical opinions offered by treating physicians are generally accorded deference, statements that a claimant suffers from unspecified limitations or is disabled or unable to work are entitled to no deference because the determination of disability is a matter left to the Commissioner. *See* 20 C.F.R. § 404.1527(d) (1).

Because the statements in question are not properly characterized as  medical opinions, the ALJ properly disregarded such. *See, e.g.*, *West v. Astrue*, 2011 WL 825791 at *8 (E.D. Tenn., Jan. 19, 2011) ("it was reasonable for the ALJ to omit discussion of Dr. Coffey's opinion because it was not a 'medical opinion' as defined by 20 C.F.R. § 416.927(a)(2)"); *Koller v. Astrue*, 2011 WL 5301569 at *5 (E.D. Ky., Nov. 3, 2011) (the ALJ is not required to defer to statements by physicians concerning matters reserved to the Commissioner). This argument is, therefore, rejected.

### 7.    Remand is Appropriate

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if "all essential factual issues have been resolved" and "the record adequately establishes [his] entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also*, *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 644 (6th Cir. 2013). This latter requirement is satisfied "where the proof of disability is overwhelming or where proof of disability is strong

and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176; *see also*, *Brooks*, 531 F. App'x at 644.

The record fails to establish that Plaintiff is entitled to an award of benefits as there does not exist overwhelming evidence that he is disabled, nor is the proof of disability strong and evidence to the contrary lacking. Moreover, resolution of Plaintiff's claim requires the resolution of factual disputes which this Court is neither authorized nor competent to undertake in the first instance. The Court concludes, therefore, that the Commissioner's decision must be vacated and this matter remanded for further findings consistent with this opinion.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **VACATED** and **REMANDED**. On remand, the Commissioner should re-evaluate Plaintiff's RFC without reference to Ms. Shively's assessment. A separate judgment shall issue.

Dated: <u>January 6, 2016</u>     <u>/s/ Robert Holmes Bell</u>
            ROBERT HOLMES BELL
            UNITED STATES DISTRICT JUDGE